# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARTOR KIKI BROWN, | : | |
|                 Plaintiff, | : | |
| | : | CIVIL ACTION |
|         v. | : | No. 16-2255 |
| | : | |
| UPPER DARBY POLICE DEPT., ET AL., | : | |
|                 Defendants. | : | |

**McHUGH, J.**                                                                              **February 13, 2020**

## MEMORANDUM OPINION

       This is a prisoner civil rights case brought by a serial litigant, Gartor Kiki Brown, who, as of this opinion's filing, has seven pending cases before the Court. Brown alleges that, on three separate occasions, Defendants violated his civil rights and committed tortious acts against him under Pennsylvania law. Specifically, Mr. Brown contends that he was subjected to excessive force during an unlawful buccal swab to obtain his DNA, and that he was later brutally assaulted on two occasions—once by members of the Upper Darby Police Department and his own public defender, and once by police officers only.

       The parties now cross-move for summary judgment. For the reasons that follow, I will grant summary judgment to Defendants on all of Mr. Brown's claims, and I will deny summary judgment to Brown.

**I.     Background**

   **A. Factual Background**[1]

On August 31, 2015, Gartor Brown was arrested on burglary charges by Detective Raymond Blohm of the Upper Darby Police Department.  ECF 72, Ex. F; Brown Dep. Tr., at 63:22-65:9.  On October 2, 2015, Detective Blohm obtained a search warrant authorizing the collection of Brown's DNA by means of a "Buccal Swab of the interior of the mouth."  Defs.' Mot. for Summ. J., ECF 72, Ex. E (Application for Search Warrant and Authorization).  To obtain the sample, Brown was transported to the Upper Darby Police Department.  Brown Dep. Tr., at 17:2-17:4.  Upon arrival, Brown was escorted in handcuffs to a temporary holding cell where he waited alone.  Holding Cell Video Recording, ECF 72, Ex. H, at 11:05:30-11:18:20; Brown Dep. Tr., at 16:11-16:13.

Blohm then entered the holding cell with the warrant and a buccal swab in hand and told Brown he intended to collect a sample of his DNA.  Upper Darby Police Department Incident Report, ECF 72, Ex. F; Brown Dep. Tr., at 18:23-19:2.  Over the next four minutes, Blohm tried to persuade Brown that the warrant was valid and that he should cooperate with efforts to obtain his DNA.  ECF 72, Ex. H, at 11:18:20-11:22:33.  Brown stated that he would not cooperate because of two perceived defects with the warrant:  his name purportedly did not appear on the warrant, and no affidavit of probable cause was attached.  ECF 72, Ex. F; Brown Dep. Tr., at 19:8-19:22.  At Brown's request, Blohm allowed Brown's public defender, Jeffrey Sobel, to enter the cell, inspect the warrant, and speak to Brown.  ECF 72, Ex. F.

---

[1] The relevant evidence in this case includes not only testimony and documents but a videotape of one of the events at the heart of the case.

For almost thirteen minutes, Sobel explained to Brown that the warrant was valid and encouraged him to provide the DNA sample voluntarily. ECF 72, Ex. F; Ex. H, at 11:23:05-11:35:45. During this exchange, Blohm explained that even if Brown believed the warrant to be invalid, he could challenge in court any evidence obtained as a result. ECF 72, Ex. F. Undeterred, Brown confirmed knowledge of his rights, reiterated his intention not to cooperate, and threatened to sue the police department if officers tried to obtain the sample by force. ECF 72, Ex. F.

In the interim, Blohm sought help from Detective Louie Panagoplos in an effort to reason with Brown. ECF 72, Ex. F. Panagoplos entered the cell with two other officers, at which point Brown assumed a kneeling position with his back to the door. ECF 72, Ex. H, at 11:38:16-11:38:20. Like Blohm and Sobel before him, Panagoplos could not persuade Brown to cooperate. ECF 72, Ex. F. Blohm reentered the cell, accompanied by Sobel, and placed a copy of the warrant in Brown's shirt pocket. ECF 72, Ex. H, at 11:40:37-11:40:57; Brown Dep. Tr., at 20:12-20:13. Blohm and Sobel tried one final time to solicit Brown's cooperation; again, Brown refused. *Id.* at 11:40:57-11:41:33.

At that point, Detective Panagoplos—assisted by Detectives Dustin Clark and Christopher Karr, and Officer Stephen Tarozzi—physically restrained Brown while Blohm attempted to swab the inside of his cheek. ECF 72, Ex. F. Brown's resistance frustrated the officer's attempt to obtain the sample and broke the buccal swab in the process. *Id.*; ECF 72, Ex. H at 11:41:40-11:41:49. Blohm left the cell to retrieve a second swab while the remaining officers surrounded Brown but did not touch him. *Id.* at 11:41:52-11:43:31. When Blohm returned to the cell, the other officers again held Brown in place by his shoulders, hair, and the side of his face while Blohm completed the buccal swab successfully. *Id.* at 11:43:44-11:44:33.

While Brown remained prone on the floor, Blohm exited the cell and then two officers helped Brown to his feet and escorted him out of the cell a short time later. *Id.* at 11:44:47-11:45:50. Blohm later filed an incident report in which he recorded that Brown appeared to bite his lip or tongue during his efforts to prevent Blohm from inserting the swab, but the injury appeared minor and did not require medical attention. ECF 72, Ex. F. Blohm also requested that the video of the incident be preserved. *Id.*

### B. Relevant Procedural History

This case has a long and complicated procedural history owing to the large number of filings by Brown.[2] Accordingly, I will limit my discussion to those filings in the case relevant to disposition of the Cross-Motions before me.

On June 15, 2016, Brown filed a Complaint against Blohm, Sobel, and the Upper Darby Police Department asserting various claims under 42 U.S.C. § 1983 as well as state law tort claims. ECF 5. All three Defendants moved to dismiss the Complaint. ECF 17, 20. Brown sought leave to amend the Complaint, ECF 21, which this Court granted on February 12, 2018. ECF 24.

Brown filed an Amended Complaint on March 23, 2018, adding several new defendants—including, as relevant here, Upper Darby Superintendent of Police Michael Chitwood and two John Doe officers—as well as a panoply of new claims. ECF 25. Although the Amended Complaint included additional details about the efforts to obtain Brown's DNA, the date, location, and nature of the allegations remained largely the same. *Id.* at 3. The Amended Complaint, not filed until late March 2018, also introduced an entirely new allegation: that in February 2016, Brown returned to the Upper Darby Police Department where he was

---

[2] This case was transferred to the undersigned on October 13, 2017.

4

taken to an interrogation room, threatened with specious criminal charges in exchange for his testimony in another criminal case, and then verbally and physically assaulted. *Id.* at 4.

Defendants moved to dismiss the Amended Complaint—ECF 28, 29, 32—and the Court granted the motions as uncontested on May 23, 2018. ECF 36. Brown moved for reconsideration on June 8, 2018, ECF 37, and the Court granted his motion on August 1, 2018, ECF 39, partially vacating the previous order. Importantly for the purposes of the pending Cross-Motions for Summary Judgment, the Court granted Sobel's motion to dismiss as it pertained to Brown's § 1983 claims but left in place Brown's state law tort claims for assault and battery.[3]

On December 6, 2018, after receiving Defendants' disclosures, Brown sought leave to substitute Officer Dustin Clark and Detective Christopher Kerr for the two Doe defendants and to add Officer Steven Tarozzi as a new defendant. ECF 46. The Court granted Brown's request to add Defendants Clark and Kerr but denied the request to add Tarozzi because Brown "would have had knowledge of [Tarozzi] at the inception of this action and could have named [him] as a 'John Doe.'" ECF 48.

The parties have now completed discovery, including Brown's deposition on December 14, 2018. At his deposition, Brown also alleged for the *first* time that immediately after the DNA swab at the Upper Darby Police Department, he was taken to a different holding cell where Defendants physically assaulted him. Brown Dep. Tr., at 78:4-78:19.

---

[3] Brown's Amended Complaint also included a new allegation that various personnel at the George W. Hill Correctional Facility—who were not sued in the original Complaint—failed to provide or facilitate medical care for the injuries he claimed to have suffered during the incident at the Upper Darby Police Department. Those defendants moved to dismiss the Amended Complaint, ECF 35, and this Court granted their motion, ECF 39.

5

Defendants have filed Motions for Summary Judgment—ECF 72, 73—and Brown filed a Cross-Motion for Summary Judgment. ECF 77. I will now address the arguments raised in the parties' Cross-Motions bearing in mind the prevailing standards applicable to each.

## II. STANDARD OF REVIEW

The parties' Motions are governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). That standard does not change when the parties cross-move for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When both parties move for summary judgment, "'[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

## III. DISCUSSION

Taking together Brown's Amended Complaint and deposition testimony, Brown seeks relief for injuries that occurred during three separate incidents at the Upper Darby Police Department: (1) the October 2, 2015, DNA swab in the holding cell; (2) the alleged assault in a separate holding cell immediately after the DNA swab; and (3) a second alleged assault that occurred in early 2016. Defendants seek summary judgment on Brown's claims regarding all three incidents.

### A. Brown's Section 1983 Claims are insufficient to withstand summary judgment.

For the reasons that follow, I find Defendants are entitled to summary judgment on Brown's § 1983 claims as to all three of the incidents, and I will discuss each of them in turn.

*1. Defendants Blohm, Clark, and Kerr did not use excessive force to obtain Brown's DNA on October 2, 2015.*

Brown contends that Defendants Blohm, Clark, and Kerr are liable under § 1983 because they used excessive force to obtain his DNA in the holding cell on October 2, 2015. In Brown's view, law enforcement may not use *any* force to obtain a DNA sample without incurring liability for excessive force. Defendants are correct that Brown's allegations on this point cannot withstand summary judgment.

As an initial matter, I note there is no authority supporting the proposition Brown advances, and well-developed principles governing excessive force claims fatally undermine Brown's case. In excessive force cases, a court "determine[s] whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The objective reasonableness inquiry requires balancing "the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id*. (quoting *Graham*, 490 U.S. at 395). Like a blood or breathalyzer test, "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" triggering the protections of the Fourth Amendment. *Maryland v. King*, 569 U.S. 435, 446 (2013). Thus, to determine whether law enforcement's efforts to obtain Brown's DNA here constituted excessive force, I must examine whether the amount and type of force used satisfies the Fourth Amendment's objective reasonableness test. *Santini*, 795 F.3d at 417 (internal citations omitted).

Under *Graham*, the reasonableness of an officer's actions is judged without regard to the officer's "underlying intent or motivation." *Graham*, 490 U.S. at 397. Rather, the officer's actions must be judged considering the "totality of the circumstances." *Id*. at 396 (citing

7

*Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). *Graham* articulates a set of nonexclusive factors to guide a court's inquiry that examine "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Moreover, the Supreme Court emphasized in *Graham* that the test must be applied from a real-world and real-time perspective:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (cleaned up).[4]

Before proceeding to analyze Brown's claims under the prevailing standards, I note that the nature of Brown's excessive force claims and the state of the record before me prompt further discussion of the standard for summary judgment. Given the nature of the *Graham* standard, the Third Circuit has recognized that although the question of reasonableness is typically reserved for a jury, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). Defendants here can make a *prima facie* showing of their entitlement to summary judgment "by producing evidence that negates the non-movant's claims" and by "pointing to an absence of evidence to support an essential element of the non-moving party's claim." *Celotex*

---

[4] This opinion uses (cleaned up) to indicate that extraneous, non-substantive information—such as internal quotation marks, alterations, and citations—has been omitted from quotations. *See, e.g.*, *United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018), *reh'g denied* (June 12, 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

8

*Corp.*, 477 U.S. at 325. For Brown to defeat summary judgment, he must respond with facts of record that contradict the facts identified by Defendants and may not rest on mere denials. *Id.* at 321 n.3; *First National Bank of Pennsylvania v. Lincoln National Life Insurance Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

Under the *Graham* standard, I am persuaded that no reasonable jury could find that the individual officers here used excessive force to obtain Brown's DNA. I reach that conclusion with confidence because the events about which Brown complains have been preserved on video, facilitating review.

Brown does not dispute the authenticity of the video or its content. Likewise, Brown does not dispute that the video fully captures what transpired during the two attempts to conduct the buccal swab on October 2, 2015. In fact, Brown conceded the authenticity of the video when asked during his deposition whether he recalled the events in question based on his own memory or based on the video, responding that it was both. Brown Dep. Tr., at 19:3-19:6. In another exchange, he linked the video with his own recollection of events even more explicitly when he noted there were certain facts he did not remember and that he required the video to fill those gaps in his memory. Brown Dep. Tr., at 21:1-21:11.

Later, Brown crystallized the essence of his excessive force claim when he testified that "[t]hey used --- they used force to obtain my --- my DNA swab. So --- so whatever was [taken] was --- was invalid." Brown Dep. Tr., at 23:4-23:6. Said another way, Brown contended that the use of force to collect his DNA was, by definition, excessive. As mentioned previously, an excessive force claim requires me to evaluate whether the officers' conduct satisfies the Fourth Amendment's objective reasonableness test, *Santini*, 795 F.3d at 417, which in turn requires me

9

to determine whether the officers' conduct was objectively reasonable when measured against the "totality of the circumstances," *Graham*, 490 U.S. at 396.

Viewing the totality of the circumstances here, contrary to Brown's assertions, the officers went out of their way to convince Brown to provide the DNA sample willingly. In fact, the officers even allowed Brown's attorney, Sobel, to do the same for more than twelve minutes. Furthermore, Brown acknowledged in his deposition that he was resistant to the officer's attempts to obtain his DNA because he believed their warrant was invalid. And Brown persisted in that position even after being told he could later challenge the buccal swab in court on Fourth Amendment grounds. Importantly, Brown conceded that, contrary to the allegations in his Amended Complaint, no one punched, kicked, or struck him during the officers' attempts to conduct the DNA swab. Brown Dep. Tr., at 75:21-76:2. As is clear in the video, once the officers realized they had no alternative but to obtain the sample by force, they used only the amount of force necessary to overcome Brown's efforts to resist them.

Several courts—including the Third Circuit in a non-precedential decision—have rejected similar excessive force claims arising from the use of physical force to secure a DNA sample when a suspect is in some way resisting the effort to do so. *U.S. v. Mathis*, 568 Fed. App'x. 149, 150 (3d Cir. 2014); *accord Carter v. Huterson*, 831 F.3d 1104, 1109 (8th Cir. 2016) (finding that the plaintiff's injuries did not permit an inference of excessive force because the plaintiff had resisted collection attempts). Given the controlling standard, the logic of these cases, the clear and uncontroverted evidence of the video, and Brown's own testimony, I conclude as a matter of law that none of the Defendants used excessive force during their attempts to conduct the buccal swab. Accordingly, I will enter summary judgment in favor of Defendants on Brown's § 1983 claims related to the October 2, 2015, DNA swab incident.

> 2. *Brown's claims about a second alleged assault on October 2, 2015, are not properly before the Court.*

At his deposition, Brown testified for the first time that after completing the buccal swab, he was taken to a different holding cell whereupon each of the Defendants, including Brown's lawyer at the time, kicked, punched, and struck him with some sort of object. Brown Dep. Tr., at 78:4-79:8. Brown's testimony about this new incident was contradictory given his inability to say with consistency which of the defendants did what or what parts of his body were injured in the incident.

Brown's allegation troubles me for another reason. The failure to include the incident in either of the Complaints means Brown's allegations about it come before me for the first time in Brown's Cross-Motion for Summary Judgment. ECF 77, at 7. Because of that posture, I find that Brown's claims as to this incident are not properly before the Court, and as a result, he is not entitled to relief on them. *See Childers v. Joseph*, 842 F.2d 689, 694 n.4 (3d Cir. 1988) (rejecting allegations raised for the first time in party's opposition to motion for summary judgment because they were not fairly presented to the district court).

Moreover, Brown's attempt to raise this issue through his Cross-Motion for Summary Judgment, after filing multiple Complaints and motions to amend his pleadings, is akin to the use of a sham affidavit to avoid summary judgment. The sham affidavit doctrine allows courts to reject a party's affidavit that unjustifiably contradicts their previously sworn testimony in an eleventh-hour effort to defeat summary judgment by manufacturing a genuine dispute of material fact. *Martin v. Merrell Dow Pharmaceuticals*, 851 F.2d 703, 706 (3d Cir. 1988). In *Martin*, the plaintiff in a products liability drug case submitted an affidavit in opposition to a motion for summary judgment a year after answering interrogatories and 14 months after her deposition that "flatly contradicted no less than eight of her prior sworn statements." *Id*. at 705. Joining its

11

sister circuits and upholding summary judgment, the Third Circuit held that such an affidavit does not create a genuine issue of material fact when "the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction." *Id*. at 706.

Here, analogously, Brown has filed two Complaints, engaged in motions practice on an array of issues, and participated in a fulsome discovery process, yet he offers no satisfactory explanation for the omission. Brown—an experienced *pro se* litigant with seven lawsuits before this Court—simply never raised the allegation as to the second attack at the police station, despite having every opportunity to do so. In that vein, I find it telling that Brown began his deposition testimony by asking whether the video of the DNA swab was the only existing video of the events that occurred at the police station on October 2, 2015, Brown Dep. Tr., at 7:22-8:6. Brown later confirmed that he made that inquiry because he contended that the real assault happened at some point after the video ended. Brown Dep. Tr., at 22:10-22:22. Like the plaintiff in *Martin*, I find it probable that Brown knew the video would subject him to "almost certain defeat in summary judgment" and raised this new allegation in an attempt to survive it. *Martin*, 851 F.2d at 705. I will therefore disregard Brown's late-inning effort to manufacture a genuine dispute of fact and enter summary judgment in favor of defendants regarding the second alleged attack on October 2, 2015.

### 3. Brown's claims about an alleged assault in February or March 2016 are barred by the statute of limitations.

As noted previously, Brown's Amended Complaint alleges yet a third attack that occurred in February 2016 during which Defendants Blohm, Fitzpatrick, and Chitwood all assaulted him because he would not agree to provide evidence against another suspect. Defendants contend they are entitled to summary judgment on this claim because it is barred by

the applicable statute of limitations.  For the reasons that follow, I conclude that Defendants are correct.

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings and provides that, within a certain timeframe, a party may amend a pleading once as of right and thereafter by leave of court or with the opposing party's consent.  Both Rule 15 and Third Circuit case law interpreting it favor a liberal policy towards granting motions to amend pleadings.  *See* Fed. R. Civ. P. 15(a)(2); *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).  Under Rule 15, an amendment to a pleading must relate back to the date of the original pleading.  Amended claims relate back when "the law that provides the applicable statute of limitations allows relation back" or "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(A)-(B).

Against that framework, I must examine whether the introduction of new the claim in Brown's Amended Complaint regarding the February 2016 incident satisfies the applicable statute of limitations or, if it does not, whether the new claim "arose out of the conduct, transaction or occurrence" set forth in the original Complaint.  The disjunctive nature of the Rule means Brown can satisfy its requirements if either prong is met.

The Third Circuit has recognized that "Section 1983 has no statute of limitations of its own" and instead "borrows the statute of limitations from state personal-injury torts."  *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018).  Accordingly, here, "Pennsylvania's two-year limitations period for personal injuries governs."  *Id*. (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)); 42 Pa. Cons. Stat. § 5524(2).  Brown's Amended Complaint does not set forth with specificity the date of the alleged third incident, making it difficult to calculate the statute of

13

limitations. The Complaint simply asserts that the incident happened in February 2016. Even assuming the incident occurred on the last day of the month, the new claim would not be timely because Brown did not file his Amended Complaint until March 23, 2018. As a result, Brown's amendment did not satisfy the relation back requirement of Rule 15(c)(1)(A).

Nevertheless, the Third Circuit has emphasized that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). For that reason, Rule 15(c)(1)(B) also allows relation back where the amendment "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." While recognizing the need for, and propriety of, this alternate method of relation back, the Third Circuit has cautioned that "Rule 15(c) is not merely an identity of transaction test, such as the rules governing joinder of claims or parties." *Glover*, 698 F.3d at 146 (cleaned up). Relation back is, therefore, only allowed "where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds" while, in contrast, "amendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *Id.* (cleaned up).

Brown's amendment setting forth the February 2016 claim is exactly the kind of "new and unanticipated claim" that the Third Circuit has counseled courts to treat "far more cautiously." *Id.* At the time Brown amended his Complaint, Defendants were only aware of his allegations of excessive force in connection with attempts to obtain his DNA on October 2, 2015. Viewed through that lens, any allegations he makes about an event happening at least four

14

months later cannot fairly be said to arise from the same conduct, transaction, or occurrence that Brown set out—or attempted to set out—in his original Complaint. There is also no plausible argument that Brown sufficiently set forth allegations of a February 2016 assault in his original Complaint. As a result, Defendants did not have the required notice, and the amendment fails to satisfy the relation back requirement of Rule 15(c)(1)(B).

Given that Brown's addition of a claim for injuries in February 2016 fails to satisfy either provision for relation back of claims, I will grant summary judgment to Defendants.

    *4. Brown has provided no evidence to support his other Section 1983 claims.*

Brown's Amended Complaint also asserts claims under Section 1983 of a Fourth Amendment unlawful search based on a warrantless mouth swab, retaliation under the First Amendment, *Monell* liability, deliberate indifference, and violation of the Equal Protection Clause under the Fourteenth Amendment. Even after conducting an independent review of the record, as is customary when adjudicating the claims of *pro se* litigants, I find no basis to support Brown's additional claims.

It bears mention that, as discussed more fully above, only Brown's claims as to the October 2, 2015, buccal swab are properly before the Court. Indeed, the record regarding that incident cuts against certain of Brown's other § 1983 claims. For example, Brown's Fourth Amendment warrantless search claim regarding the DNA swab lacks vitality when the evidence demonstrates the presence of a valid warrant and shows that police officers and Sobel tried to explain its validity to Brown at the time of the swab. Additionally, the determination that officers obtained Brown's DNA with a valid warrant and did so without using excessive force means that Brown suffered no constitutional violation, eliminating Brown's municipal liability claim under *Monell*. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hill v. Borough of*

*Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (dismissal of § 1983 claims required dismissal of *Monell* claims based upon the same factual allegations of unlawful conduct.).

I will therefore enter summary judgment in favor of the Defendants as to all of Brown's other § 1983 claims.

**B. Defendants are entitled to summary judgment on Brown's state law claims.**

Brown's supplemental state law claims cannot withstand summary judgment. With respect to the October 2, 2015, incident alleged in the Complaint, based on my review of the videotape I conclude that Defendants are not liable as a matter of law. Brown's public defender never made physical contact with him or took any threatening action that could be construed as an assault. And the officers were entitled to use reasonable force to prevent Brown's interference with the performance of their duties so long as it was not unnecessary or excessive. *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994). As set forth above, the force used was objectively reasonable given Brown's resistance to providing a DNA sample.

As to other events that purportedly took place off-camera on that same date, Brown's failure to make any such allegations until summary judgment means they are not entitled to any weight and properly discounted. And as to further alleged assaults in February 2016, any such claims are barred by the statute of limitations.

Finally, Brown otherwise generally asserts state law claims for negligence, harassment, emotional distress, and discrimination, but those claims are barred by the Political Subdivision Tort Claims Act. 42 Pa. Cons. Stat. § 8501 *et. seq*.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment will be **GRANTED**, and Brown's Cross-Motion for Summary Judgment will be **DENIED**. An appropriate Order follows.

                                          /s/ Gerald Austin McHugh
                                         Gerald Austin McHugh
                                         United States District Judge